IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MFE ENTERPRISES, INC., a Texas Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 24-CV-304-JFJ ) |
| ALPHANETICS, an Oklahoma Corporation; and JEFFREY ROSENBERG, | ) ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Before the Court is Plaintiff MFE Enterprises, Inc.'s ("MFE") Motion for Preliminary Injunction pursuant to Fed. R. Civ. P. 65 (ECF No. 4). The Court held a hearing on September 13, 2024, to discuss discovery procedures, and the Court held an evidentiary hearing on November 22, 2024. After consideration of the briefs and evidence, the Court finds MFE has not met the stringent standard for granting a preliminary injunction. MFE's Motion for Preliminary Injunction is **DENIED**.

**I.    Background**

The following factual background is based on the pleadings, testimony, and exhibits received at the hearing and attached to the parties' briefs. Plaintiff MFE alleges violations of the federal Defend Trade Secrets Act of 2016 ("DTSA"), the Oklahoma Uniform Trade Secrets Act ("OUTSA"), and the Oklahoma common law tort of misappropriation of intangible property. Compl. (ECF No. 2). The Complaint names as defendants Alphanetics, Inc. ("Alphanetics") and Jeffrey Rosenberg ("Rosenberg") (together, "Defendants").

A.     **Background on MFE and Alphanetics**

MFE is a family-owned business that manufactures and sells non-destructive tank inspection equipment for oil and gas storage tanks. Rosenberg founded Alphanetics in 1995 as a consulting company, and Rosenberg is the sole owner and employee of Alphanetics. ECF No. 16-1 at ¶ 1 (Decl. of Rosenberg).

In the 1990s, MFE manufactured a tank scanner used in the energy industry to identify and locate leaks, named the "MFE-2412."[1] The MFE-2412 uses a method called "magnetic flux leakage" ("MFL") to detect tank leaks. This method involves an array of magnets and coil sensors contained in a closed box, connected to a long handle and electronic sensor screen for the user. MFE claims trade secrets in various design aspects of the MFE-2412, including the arrangement of the coil sensors and location of the magnets.

In 1995, Tank Consultants, Inc. ("TCI") purchased an MFE-2412 scanner from MFE and signed a non-disclosure agreement ("NDA") prohibiting TCI from misappropriating MFE's trade secrets or copying the MFE-2412. Pl. Ex. 1 (NDA between MFE and TCI). According to Rosenberg's testimony, TCI hired him to repair the MFE-2412 scanner it had purchased. Rosenberg testified he was unaware of the NDA between TCI and MFE when he repaired the MFE-2412. Rosenberg partially took apart the MFE-2412, including the scanner box, to repair the electronics box. In so doing, he realized he may be able to design an improved tank scanner. Rosenberg then designed a competitor tank floor scanner, which TCI purchased and modified. TCI began marketing Rosenberg's scanner as the "TCI-2000."

---

[1] MFE produced several versions of the MFE-2412 over the decades, from "Mark I" to "Mark IV." It is unclear which versions of the MFE-2412 were produced in different years, but the trade secrets contained in the various versions do not significantly vary. For simplicity, the Court generally refers only to the MFE-2412 without reference to any specific version.

2

  **B.  Texas Litigation**

  In July 2000, MFE sued TCI in the United States District Court for the Southern District of Texas, alleging breach of contract and misappropriation of trade secrets. *See MFE Enterprises., Inc. v. Tank Consultants, Inc.*, No. 4:00-cv-2302 (S.D. Tex.). After a bench trial, the district judge in that case found in MFE's favor and awarded damages against TCI. *See* ECF No. 43 in Case No. 4:00-cv-2302 (Judgment) (S.D. Tex. Aug. 6, 2001). Rosenberg attended the bench trial and testified as a witness in that case. According to Rosenberg, the judge in that case stated orally in his ruling that the TCI-2000 was a "copy" of the MFE-2412.[2] The Fifth Circuit Court of Appeals affirmed the judgment in a two-paragraph, per curiam opinion. *See* ECF No. 56 in Case No. 4:00-cv-2302 (copy of May 7, 2003, 5th Cir. Op.) (S.D. Tex. June 2, 2003).

  **C.  Rosenberg's Development of the MST-10**

  After the Texas litigation, Rosenberg turned his attention to other projects with Alphanetics. Some years later, Rosenberg turned back to the concept of an MFL tank floor scanner. Rosenberg testified that he knew he could not copy MFE's design. Instead, he worked on developing a unique design that he could patent. He reviewed expired patents for MFL designs to determine what configurations were in the public domain and therefore not protected as trade secrets. Around 2015, Rosenberg designed and developed an MFL tank scanner called the MST-10. Rosenberg ultimately obtained two patents for the MST-10 tank scanner: (1) for the "apparatus for detecting [MFL] and methods of making and using same," which he obtained in 2017 and (2) for the "wheel height adjustment assembly and methods of making and using same," which he obtained in 2018. Def. Exs. 1, 2.

---

[2] The judge in that case did not issue a written order, and the transcript for those 2001 trial proceedings are not available electronically.

Rosenberg testified that an MFL tank scanner typically consists of a horseshoe-shaped magnet attached to a steel plate, along with coil sensors that measure escaped air from areas of magnetic flux, which identify a leak in the tank floor.  Rosenberg explained that, in his own patents for the MST-10, he referenced an expired patent from 1970.  The 1970 patent displayed an array of coil sensors arranged in a differential pattern as a non-destructive method to check for pipeline leaks.  Def. Ex. 4.  Another expired patent on which Rosenberg relied showed the horseshoe-shaped permanent magnet design for tank floor scanners.  Def. Ex. 5.  Rosenberg's own patent states that his design improved the MFL detection apparatus, with improved accuracy and fewer false signals.  Def. Ex. 1.

Rosenberg testified that, in 2017, he first published a website to advertise the MST-10, which included pictures of his tank scanner.  Def. Ex. 10 (pictures of MST-10 from website).  Rosenberg also began selling his scanner to the public in 2017.  Rosenberg did not attempt to keep the MST-10 a secret, but instead publicly marketed it.  He has not handled any scanner manufactured by MFE since the late 1990s, having only seen pictures of MFE's scanners since that time.  He did not retain any diagrams or blueprints of the MFE-2412.

### D.     MFE's Discovery of Alphanetics' MST-10 Scanner

Derrick Duke ("Duke"), Director of Operations at MFE, testified on MFE's behalf at the hearing.  He testified that MFE first became aware of Alphanetics' competing MST-10 product in January 2024, at an industry conference in San Antonio.  MFE alleges that the MST-10 is a copy of the MFE-2412 "Mark II" scanner model.  Upon learning of the competing product, Duke concluded that, because Rosenberg illicitly learned MFE's trade secrets back in the 1990s, he must have wrongfully misappropriated those trade secrets for a second time in designing another competitive product.

4

### E. MFE's Measures to Protect Trade Secrets

MFE requires each purchaser or renter of its tank scanners to sign an NDA. The NDA prohibits misappropriation of MFE's trade secrets and prohibits third-party sale or rental of the tank scanner without signing a separate NDA. Specifically, MFE's standard NDA provides:

> Customer is the sole party authorized to use and operate the Scanners. Customer will not use the Scanners in a manner inconsistent with the purpose intended for the Scanners in the inspection of tanks. To this end, if Customer or any of its customers, agents, contractors, or other persons or organizations over which customer has control, decide to rent, sell, assign, transfer, or relinquish possession of the Scanners or any component thereof, to any person or organization, then customer will obtain the signatures of the receiving party or parties on a copy of this [NDA].

Pl. Ex. 1 at 3 (form NDA). MFE sells its scanners worldwide and uses an NDA in each sale or lease. MFE does not keep records of third-party sales or require that any of its direct purchasers provide notice to MFE of third-party sales. Instead, MFE trusts that its buyers and lessees will honor their agreements and obtain NDA signatures from downstream purchasers. Duke testified he regularly checks on third-party sales of MFL-type tank scanners by performing searches on Google. MFE has no patents on the MFE-2412 scanner.

Defendants presented evidence that MFE scanners are available for sale or rent on third-party websites without any requirement of signing an NDA. *See* ECF Nos. 16-5, 16-6, 16-7. Photographs of the MFE-2412 in the record indicate the scanner itself does not have any notices or warnings against attempts to open the scanner box containing the trade-secret protected information, or against attempts to copy or reverse-engineer MFE's scanner.

### F. MFE's Alleged Lost Sales to Alphanetics

Duke testified that only MFE and Alphanetics produce coil sensor tank scanners, and no other companies use similar technology. Duke testified that MFE has lost sales to Alphanetics on tank scanners. Duke testified he knew of two buyers of Alphanetics' tank scanner.

G.  **Claims Asserted in Lawsuit**

MFE filed this lawsuit on June 27, 2024. MFE seeks relief against Defendants for: (1) violation of the OUTSA (Count 1); (2) violation of DTSA (Count 2); and (3) misappropriation of intangible property (Count 3). MFE seeks various forms of injunctive relief and damages, including actual and exemplary damages.

H.  **Request for Preliminary Injunction**

In the Motion for Preliminary Injunction, MFE requested various types of relief. ECF No. 4 at 7. At an initial hearing on the motion, MFE withdrew all requests but one. *See* ECF No. 33 (Minutes of Sept. 13, 2024, hearing). The remaining request for preliminary injunction is that the Court enter an order requiring Alphanetics and Rosenberg "[t]o refrain, cease and desist immediately from using or disclosing any trade secrets or confidential information belonging to MFE Enterprises, Inc., including the production, sale, promotion of the MST-10 or any other similar equipment manufactured in whole or in part by Alphanetics." ECF No. 4 at 7.

II. **Preliminary Injunction Standards**

A.  **General Standards**

Preliminary injunctions are "extraordinary equitable remedies." *Westar Energy, v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). To obtain such relief, the moving party must demonstrate that four equitable factors weigh in favor of the injunction: "(1) a substantial likelihood that it will ultimately succeed on the merits of its suit; (2) it is likely to be irreparably injured without an injunction; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and, (4) the injunction, if issued, will not adversely affect the public interest." *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) (citing *Gen. Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007)).

Further, the DTSA specifically authorizes a court to grant injunctive relief "to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable." 18 U.S.C. § 1836(b)(3)(A)(i). The statute does not mandate injunctive relief, however, and does not allow a presumption of irreparable harm. *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017).

"[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). Accordingly, "[t]he Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). "The fact that evidence might be excludable goes to the weight of that evidence, not necessarily its admissibility." *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1119 (D. Colo. 2017) (citation omitted).

### B. "Disfavored" Injunction Standards

When a moving party requests a "disfavored" preliminary injunction, that party must make a heightened showing of the four factors to obtain the injunction. *See Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019). An injunction is disfavored when: "(1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id.* (citing *Awad v. Ziriax*, 670 F.3d 1111,1125 (10th Cir. 2012)). "[A]n injunction is 'mandatory' if 'its terms would alter, rather than preserve, the status quo by commanding some positive act.'" *Id.* (quoting *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)). *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (explaining that a mandatory injunction "places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction")

(cleaned up). An injunction disturbs the status quo if it disrupts "the last peaceable uncontested status existing between the parties before the dispute developed." *Schreier*, 427 F.3d at 1260 (quotation omitted). An injunction grants "all the relief" to which the movant would be entitled only if "the effect of the order, once complied with, cannot be undone." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247 (10th Cir. 2001) (quotation omitted).

To obtain a disfavored injunction, the moving party must make a "strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) (quotation omitted). "[T]he Tenth Circuit has never described the 'strong showing' requirement in terms of a quantum of evidence or heightened burden of persuasion (*e.g.*, clear and convincing)." *Central Bancorp., Inc. v. Central Bancompany, Inc.*, 385 F. Supp. 3d 1122, 1136 (D. Colo. 2019). Instead, the district court applying the heightened standard must "'more closely scrutinize[ ]' the likelihood-of-success and balance-of-harms factors 'to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" *Id.* (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc)).

Here, it is undisputed that MFE requests a disfavored injunction, because the injunction would be "mandatory" and would alter the status quo. The injunction would affirmatively require Defendants to cease production, sale, and promotion of the MST-10 or any other similar equipment. The MST-10 is already on sale to the public, and it has been available for sale since 2017. The Court would need to provide ongoing supervision to assure Defendants abide by the injunction. Therefore, the Court will apply the heightened standard to MFE's request.

### III. Preliminary Injunction Analysis

#### A. MFE Failed to Show Substantial Likelihood of Success on the Merits of DTSA Claim

In briefing and at the evidentiary hearing, the parties focused on MFE's claim for misappropriation of trade secrets in violation of the DTSA and did not address the state-based claims.[3] Under the DTSA, an "owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A plaintiff alleging violation of the DTSA "must allege that it lawfully owned information of independent economic value that it took reasonable measures to keep secret, and that the defendant under consideration either acquired, disclosed, or used, improperly." *ATS Group, LLC v. Legacy Tank & Indus. Servs., LLC*, 407 F. Supp. 3d 1186, 1197 (W.D. Okla. 2019) (citing 18 U.S.C. § 1839 – DTSA definitions); *John Zink Co., LLC v. Robertson*, No. 22-CV-525-JFH-CDL, 2022 WL 17547786, at *4 (N.D. Okla. Dec. 9, 2022) (discussing elements of DTSA claim).

Defendants argue MFE is unlikely to succeed on the merits of its DTSA claim, because (1) the statute of limitations for alleging a DTSA violation has expired; (2) MFE has not established the existence of a protectible trade secret; (3) MFE did not take reasonable measures to protect any such trade secret from public exposure; and (4) MFE has not shown that Defendants developed the MST-10 by improper acquisition and use of MFE's trade secrets.

---

[3] The OUTSA "establishes a greater burden [than federal law] to plead a trade secrets misappropriation claim." *Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *7 (W.D. Okla. Dec. 8, 2017). In addition to showing the elements of a federal DTSA claim, the plaintiff must show "use" of the trade secret to the plaintiff's "detriment" in order to state an OUTSA claim. *Id.* Accordingly, the Court analyzes whether MFE meets the lowered standard for establishing violation of the DTSA.

The Court concludes MFE failed to show a substantial likelihood of succeeding on the DTSA claim for two reasons: (1) MFE failed to demonstrate a likelihood of overcoming Defendants' statute of limitations defense; and (2) MFE failed to demonstrate a likelihood of success on the misappropriation element.[4]

### 1. Statute of Limitations

The applicable statute of limitations for a civil action under the DTSA is three years after "the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d).[5] Further "a continuing misappropriation constitutes a single claim of misappropriation." *Id.*

Based on the current record, MFE failed to demonstrate a likelihood of overcoming Defendants' statute of limitations defense. The evidence indicates that a reasonably diligent person could have performed a simple Internet search in 2017 for terms such as "MFL tank scanner" and found Alphanetics' MST-10 tank floor scanner available for sale. The Court's own Internet search via the Google search engine for "MFL tank scanner" in December 2024 revealed Alphanetics' website advertising the MST-10 as the second result, just under MFE's website. MFE asserts it first became aware of the competing scanner in 2024, based on Duke's attendance at a trade show. However, MFE does not attempt to demonstrate, through explanation or evidence, that it exercised reasonable diligence but was unable to discover the competing scanner before that time. Based on the publicly available information in 2017, the limited number of tank scanners

---

[4] For purposes of this motion, the Court assumes MFE can demonstrate it has at least one protectible trade secret in its unique configuration of sensor components contained within the MFE-2412. The Court also assumes MFE took reasonable measures of secrecy to protect its trade secret(s) by requiring customers to sign an NDA, which requires third-party buyers or lessees to sign an additional NDA.

[5] OUTSA has a similar three-year discovery-based statute of limitations. *See* Okla. Stat. tit. 78 § 91.

10

on the market, and the ease of searching the Internet for competing scanners, MFE's DTSA claim likely became time-barred at some point in 2020. MFE filed its Complaint in this case on June 27, 2024. The strength of Defendants' statute of limitations defense weighs against MFE's likelihood of success on its DTSA claim.

### 2. Misappropriation

"Misappropriation" includes both (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," and (2) "disclosure or use of a trade secret of another without express or implied consent by a person who" acquired the trade secret under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret. 18 U.S.C. § 1839(5). "Improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." 18 U.S.C. § 1839(6).

Based on the current record, MFE failed to demonstrate a likelihood of proving that Rosenberg misappropriated any of MFE's potential trade secrets in designing and selling the MST-10. MFE relies exclusively on Rosenberg's prior knowledge of MFE's trade secrets, which he acquired in the 1990s. However, Rosenberg testified he did not examine any of the MFE-2412 models after the Texas litigation began. Rosenberg intentionally researched public domain, expired patents on coil and magnet designs and MFL scanners as a separate basis for his development of the MST-10. Rosenberg also designed a unique configuration for his scanner, for which he obtained two patents. Rosenberg testified he ensured everything in his design was either unique to his product or available in the public domain. Although Rosenberg may have acquired trade secret information in the past, the Court finds it unlikely that MFE will successfully demonstrate that Rosenberg used or misappropriated that information in developing the MST-10.

Because MFE cannot establish either (1) a likelihood of overcoming the statute of limitations defense, or (2) a likelihood of success on the misappropriation element, the Court correspondingly finds MFE has not made a "strong showing" of likelihood of success on the merits of the DTSA claim. This factor weighs against granting the extraordinary relief of a disfavored preliminary injunction.

B.      **Balance of Harms Favors Defendants**

To satisfy this factor, "[t]he plaintiff must show that its threatened injury, absent injunctive relief, outweighs the opposing party's threatened injury under the injunction." *John Zink Co.*, 2022 WL 17547786, at *7 (citing *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).

Based on the current evidence, MFE failed to show that the balance of hardships favors MFE. MFE's threatened injury absent injunctive relief is potential lost sales to Alphanetics and further exposure of its trade secrets to purchasers of the MST-10. Neither constitute a significant injury. As to lost sales, MFE does not allege that Defendants are ruining MFE's business by poaching its customers. In fact, even though the MST-10 has been available for sale since 2017, MFE was wholly unaware of the MST-10 until 2024, when Duke attended a trade show. MFE did not present evidence of any discernable impact on its sales during the 2017-2024 time frame. Duke testified to the loss of two customers to Alphanetics, but MFE did not show how much revenue was lost from those customers or what percentage of sales those losses represented. MFE has certainly not shown that it is losing a large percentage of its business to Defendants. As to any ongoing exposure of its trade secrets, Plaintiffs did not a make substantial showing of any actual use or misappropriation of MFE's trade secrets. Arguably, a person who views the patented

configuration of scanner components in the MST-10 is merely viewing Rosenberg's patented design, rather than MFE's protected trade secrets.

Conversely, Defendants' threatened injuries if an injunction is granted are certain, immediate, and significant. Defendants would be deprived of selling the product during the injunction period. Further, unlike MFE, Defendants have a patent on their competing product. The period of patent protection would not toll if Defendants are enjoined from selling or marketing the MST-10, and Defendants would be deprived of a period of exclusivity on their intellectual property while the case remains pending. Defendants' dual injuries of lost sales and lost time on the patent if the injunction is granted outweigh the injuries potentially suffered by MFE if the injunction is not granted. MFE therefore failed to make a "strong showing" that the balance of harms favors MFE. To the contrary, the evidence on this factor favors Defendants.[6]

## IV. Conclusion

For the reasons detailed above, MFE failed to make the strong showing necessary for entry of a disfavored preliminary injunction that would alter the status quo while the lawsuit is pending. MFE's Motion for Preliminary Injunction (ECF No. 4) is **DENIED**.

**SO ORDERED** this 23rd day of December, 2024.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**

---

[6] Because MFE failed to make a "strong showing" that either of the two factors of substantial likelihood of success on the merits and balance of harms weigh in favor of granting the mandatory requested relief, the Court does not consider the other factors. *See State v. U.S. Envtl. Prot. Agency*, 989 F.3d 874, 890 (10th Cir. 2021) (explaining that, "[w]hen the failure to satisfy one [preliminary injunction] factor is dispositive, a court need not consider the other factors") (citation omitted).